

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 14, 1959

Honorable M. T. Harrington, Chairman
Cotton Research Committee of Texas
Texas A & M College
College Station, Texas

Opinion No. WW-685

Re: Authority of the Comp-
troller of Public Accounts
to approve a P-1 voucher
drawn against the Cot-
ton Research Committee
in favor of Texas Techno-
logical College for re-
imbursement for the
purchase price of two
spinning frames pur-
chased for the Committee.

Dear Dr. Harrington:

You have requested our opinion concerning a ques-
tion which is predicated on the following facts:

The Cotton Research Committee receives research
proposals from the various State educational institutions
and State agencies. The Committee evaluates each of these
proposals and within certain dollar limitations, imposed
by the appropriation to the Committee, agrees to sponsor
certain of the proposals.

Under the agreement entered into between the Com-
mittee and the State educational institutions or State agen-
cies, the Committee agrees to pay the cost of conducting the
research covered by the accepted proposal.

Quoting from your letter of April 15, 1959, to the
Honorable Robert S. Calvert:

"     . . .

"The Cotton Research Committee of Texas has
had as a policy for several years and provides
in its annual memorandum agreement with each

institution, that any equipment purchased
for a research project for which Committee
appropriated funds are used to reimburse
the educational institution shall become
the property of the Cotton Research Commit-
tee of Texas and shall be subject to the
Committee's control. This policy enables
the Committee to transfer items of equip-
ment from one college campus to another in
sponsoring various research projects and
it eliminates duplication of technical re-
search equipment between the institutions
conducting research for the Committee.

"The transaction in question consists
of two spinning frames costing $20,511.58
which were needed by Texas Technological
College to conduct a research project covered
by a memorandum agreement between the Cotton
Research Committee and Texas Technological
College. In evaluating this research pro-
posal submitted by the Texas Technological
College to the Committee, we were aware that
it would be necessary for Texas Technologi-
cal College to secure these two spinning
frames and we provided in our memorandum
agreement with Texas Technological College
a sum sufficient to cover these items of
equipment with our standard provision that
the equipment, once Texas Technological Col-
lege had been reimbursed for its cost, would
become property subject to the control of
the Cotton Research Committee.

"For this particular transaction, Texas
Technological College ordered the spinning
frames through the State Board of Control and
paid for the items with Local Funds not de-
posited in the State Treasury. The attached
P-1 form is an attempt on the part of the
Cotton Research Committee of Texas to carry
out its agreement with Texas Technological
College to reimburse the Local Funds of
Texas Technological College out of the Gener-
al Revenue appropriations made by the 55th
Legislature to the Cotton Research Committee
of Texas for the costs of conducting research
programs."

The Comptroller of Public Accounts has refused to approve the voucher to reimburse the Texas Technological College Local Funds for the cost of the two spinning frames used in the research program conducted by the College.

In his letter to you, dated April 20, 1959, the Comptroller states:

> " . . . I am of the opinion that the act creating the Cotton Research Committee does not provide for the sale of equipment from the schools which participate in the program, to the Cotton Research Committee.
>
> "It is my further opinion that the act only provides for the reimbursement for the use of the equipment and not for Capitol Outlay."

Your letter concludes by asking our opinion "as to the legality of the claim."

In view of the facts set forth, it is necessary for us to determine whether the Cotton Research Committee was acting within its authority in seeking to reimburse the Texas Technological College Local Funds for the cost of the two spinning frames used in a research program sponsored by the Committee.

In order to determine the scope of the authority of the Cotton Research Committee, it will be necessary to look to the statute creating the Committee. Section 2 of Article 165-4a of Vernon's Annotated Texas Civil Statutes reads in par as follows:

> "A Cotton Research Committee . . . is hereby created and established to cause surveys, research and investigations to be made relating to the utilization of the cotton fiber, cottonseed, and all other products of the cotton plant, with authority to contract with any and all Agricultural Agencies and Departments of the State, and all State Educational Institutions and State Agencies to perform any such services for said Committee

and for the use of their respective available facilities, as it may deem proper, and to compensate such Agencies, Departments and Institutions to be paid from money appropriated by the Legislature for the purposes of this Act. . . ." (Emphasis ours).

Quoting now from the appropriation to the Cotton Research Committee in House Bill 133, Acts 55th Legislature, Regular Session, 1957, Chapter 385, page 1130, we find language which has further bearing on the power of the Committee:

" . . ./T/he Cotton Research Committee is hereby authorized, to contract with any or all of said institutions to perform such services for said Committee as it may deem proper and to compensate said institution or institutions for the cost thereof from the funds herein appropriated. . . ." (Emphasis ours).

The Committee is specifically directed to cause surveys, research and investigations to be made relating to utilization of cotton fiber and cotton products and in so doing the Committee is granted the power to contract with the various State Educational Institutions and Agricultural Agencies for the use of their facilities and performance of services, as it may deem proper. Although this is a grant of broad discretionary power of contract, we are not disposed to hold that it is unlimited.

The language used in neither of the above quotations specifically authorizes the Committee to reimburse an institution for the cost of equipment used in cotton research projects and by agreement thereby become the owner of such equipment. Therefore, we must ascertain the legislative intent with regard to this statute and construe the statute in the light of such intent and the rules of statutory construction.

In 39 Texas Jurisprudence 90, Statutes, pages 166-167, we find the following statement with regard to the legislative intent:

"'The intention of the Legislature in enacting a law is the law itself,' 'the essence of the law,' and 'the spirit which gives life' to the enactment. Hence, the aim and object of construction is to ascertain and enforce the

legislative intent, and not to defeat, nullify or thwart it."

The following language from Section 1 of Article 165-4a of Vernon's Annotated Texas Civil Statutes sets forth the purpose which prompted the legislature to act:

"By this Act it is expressly declared that the policy of all the various agricultural agencies of the State of Texas shall be shaped so that the subject of the increased use and outlet for farm products, especially cotton, shall be stressed as much as the production of said products. . . ." (Emphasis ours).

When we consider this language in conjunction with the authority granted the Committee to cause surveys, research and investigations to be made relating to the utilization of cotton and cotton products, we conclude that the Legislature intended that the Committee have as one of its primary purposes the coordination of the various surveys, research projects and investigations carried on under its authority in such a manner as to prevent duplication of effort and assure efficiency.

An additional guide in construing the statute as a whole is expressed in the following rule of statutory construction stated in 39 Texas Jurisprudence 91, Statutes, pages 172-173:

"An important rule to be observed in statutory interpretation is that an Act should be given a fair, rational, reasonable and sensible construction, considering its language and subject matter, and with a view to accomplishing the legislative intent and purpose. . . . /the/ construction should comport with common sense and justice and irrational conclusions or deductions should be avoided. . . ."

Undoubtedly the spinning frames purchased by Texas Technological College for use in a research project sponsored by the Committee are equipment which can and will be utilized in future projects under the sponsorship of the Committee. Whether such future utilization of the spinning frames will be in a project carried out at Texas Technological College or some other State educational institution or Agency is a factor that cannot, within reason, be determined at the present time. It is certainly probable that spinning frames

of this type will be necessary equipment for future research projects which will be conducted by State educational institutions or agencies other than Texas Technological College.

It would certainly not be in keeping with the Legislative intent with regard to the efficient coordination of projects and duplication of effort to require that some other State institution or agency be required to purchase identical or similar spinning frames in order to carry out a research project under the sponsorship of the Committee when the needed equipment was sitting unused at Texas Technological College and the Committee was unable to order it moved to the needed location simply because it did not own it.

In order to accomplish a rational, reasonable and sensible construction of the statute, considering its language and subject matter and the intention of the Legislature, it is our opinion that the Cotton Research Committee had the authority, under its power to contract, to enter into an agreement to reimburse Texas Technological College for the cost of the spinning frames purchased by the College for use in a research program sponsored by the Committee and under this agreement, become the owner of the spinning frames. Therefore, you are advised that the claim is legal and the voucher should be approved.

## SUMMARY

The Cotton Research Committee had the authority to enter into an agreement to reimburse Texas Technological College for the cost of two spinning frames purchased by the College to be used in a research project sponsored by the Committee and become the owner of the spinning frames; the claim represented by the P-1 voucher is a legal claim and should be approved.

Yours very truly,

WILL WILSON
Attorney General of Texas

By W. O. Shultz
Assistant

WOS:wb:mfh

Honorable M. T. Harrington, page 7 (WW-685)


APPROVED:

OPINION COMMITTEE
Geo. P. Blackburn, Chairman

Raymond V. Loftin, Jr.
Joe Allen Osborn
Riley Eugene Fletcher
L. P. Lollar

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert